UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**CENTRAL FLORIDA COUNCIL
BOY SCOUTS OF AMERICA, INC.,**

                      **Counterclaim Plaintiff,**

-vs-                                                                  **Case No. 6:07-cv-1091-Orl-19GJK**

**PALMA RASMUSSEN,
KEITH RASMUSSEN,**

                      **Counterclaim Defendants.**

_____

# ORDER

This case comes before the Court on the following:

1. Motion for Sanctions by Central Florida Council Boy Scouts of America, Inc. (Doc. No. 176, filed Feb. 23, 2009);

2. Declarations in Support of Motion for Sanctions by Central Florida Council Boy Scouts of America, Inc. (Doc. Nos. 177-79, filed Feb. 23, 2009);

3. Final Pretrial Conference Held Before Magistrate Judge Gregory J. Kelly (Doc. No. 180, filed Mar. 4, 2009);

4. Report and Recommendation of Magistrate Judge Gregory J. Kelly (Doc. No. 182, filed Apr. 15, 2009);

5. Motion by Palma and Keith Rasmussen to Substitute Attorney Anthony J. Brady, Jr. for Peter J. Cannon (Doc. No. 184, filed Apr. 28, 2009);

6. Brief in Response to the Report and Recommendation by Palma and Keith Rasmussen (Doc. No. 185, filed Apr. 29, 2009); and

7.  Memorandum of Law by Central Florida Council Boy Scouts of America, Inc. in Opposition to Counterclaim Defendants' Brief in Response to the Report and Recommendation (Doc. No. 186, filed May 13, 2009).

**Background**

Palma Rasmussen brought suit against the Central Florida Council Boy Scouts of America, Inc. ("the Council") in June of 2007, alleging that it had violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12111-17, 12181-89 (2006), and the Florida Civil Rights Act ("FCRA"), Fla. Stat. §§ 760.01-760.11 (2007). (Doc. No. 1, filed June 26, 2007; Doc. No. 7, filed Oct. 12, 2007.) The Council filed counterclaims against Mrs. Rasmussen and her husband, Keith Rasmussen, both former Scout Leaders, for an accounting of the finances handled by the Rasmussens and for the alleged conversion of the Council's property. (Doc. No. 17 at 10-17, filed Nov. 7, 2007.) The Council then moved for summary judgment in its favor on all claims. (Doc. No. 25, filed Dec. 21, 2007.) The Rasmussens, represented by attorneys Edward R. Gay and Phillip M. Agnes, opposed the Motion. (Doc. No. 43, filed Jan. 23, 2008.) The Court granted summary judgment in part and denied it in part, finding that a narrow issue of fact remained with respect to Mrs. Rasmussen's ADA and FCRA claims and, with respect to the Council's counterclaim, that the Rasmussens were obliged as a matter of law to provide an accounting of the finances that they handled.[1] (Doc. No. 76, filed Mar. 7, 2008.) Through Mr. Gay, the Rasmussens then filed a Motion seeking reconsideration on the narrowing of their ADA and FCRA claims and for clarification on their specific duties of providing an accounting. (Doc. No. 77, filed Mar. 17, 2008.) The Court instructed the Rasmussens:

---

[1] The Order also found that the Council was not entitled to summary judgment on its conversion counterclaim. (Doc. No. 76.)

(1) that they would not be required to use a professional accountant to provide the accounting; (2) however, the failure to provide an adequate accounting would result in a presumption that they mishandled the entrusted funds; and (3) regardless of the chosen method, they "would . . . be required to explain in detail and with documentation how each fund was handled." (Doc. No. 86 at 5-9, filed Apr. 11, 2008.) The Court also rejected the request for reconsideration, finding that (1) the Rasmussens had offered no justification for their failure to submit certain evidence before the briefing period closed; and (2) in any event, the Rasmussens offered no explanation as to how the additional evidence would change the Court's decision. (*Id.* at 1-5.)

Thereafter, the Rasmussens filed a *pro se* Motion for Reconsideration, alleging that Mr. Gay was responsible for the belated filings and had been unresponsive to their inquiries. (Doc. No. 89, filed May 6, 2008.) The Court struck the Motion under Local Rule 2.03(d) which prohibits represented parties from filing documents *pro se* absent prior leave of the Court. (*See* Doc. No. 90, filed May 8, 2008.) The Rasmussens then terminated Mr. Gay, leaving Mr. Agnes as their sole attorney. (*See* Doc. Nos. 91-93, 95, 96.)

Between August and December of 2008, the parties filed a series of summary judgment motions and responses directed at the issues remaining in the case. (*See* Doc. No. 173 at 1-2 (listing the documents associated with the motions).) All of the Rasmussens' responses and motions were timely filed by Mr. Agnes. (*See* Doc. Nos. 120, 122, 144, 166.) However, several days before the Rasmussens' response to the Council's last filed summary judgment motion was due, the Rasmussens moved, through Attorney Peter Cannon, to substitute Cannon as counsel for Agnes. (Doc. No. 163, filed Dec. 4, 2008.) The Motion stated that Mr. Agnes needed to withdraw because

of "conflicting demands of his practice and this case." (Doc. No. 163 at 2.) That Motion was granted after the briefing deadline. (Doc. No. 167, filed Dec. 10, 2008.)

The Court granted the Council's request for summary judgment on Mrs. Rasmussen's remaining ADA and FCRA claims. (Doc. No. 173 at 3-20, filed Feb. 9, 2009.) On the issue of whether the Rasmussens had discharged their duty to provide an adequate accounting, the Court noted that the common understanding of the term "accounting" "envisions some sort of detailed ledger or itemized statement." (*Id.* at 22 (citing Black's Law Dictionary 18 (8th ed. 2004); Webster's II New Riverside Dictionary 74 (1994)).) By contrast, the Rasmussens had provided the Council with a series of annotated bank statements. (*Id.*) Those annotations consisted mostly of vague explanations which failed to clearly account for the Rasmussens' expenditures. (*Id.*) Ultimately, the Court agreed with the Council that the Rasmussens failed to provide a "real" accounting; however, it did not agree that every single annotation that the Rasmussens provided "was so ambiguous as to warrant judgment as a matter of law on the entire sum of draw downs, $89,132.18 by the Council's estimate." (*Id.* at 22-23.) The Court then explained:

> The Rasmussens, who carry the burden to prove the legitimacy of each expense, will be required at trial to explain each response and how each constitutes a legitimate expense. At this point, the Council will not be required to demonstrate the ambiguity of each expense. *See Traub*, 135 So. 2d at 244. Preferably, expenses should be categorized to promote efficiency and prevent the overlap of explanations. It should be emphasized that the Court will not *sua sponte* wade through several hundred pages of bank statements and canceled checks to identify unambiguous entries for the Rasmussens' benefit.

(*Id.* at 23 n.11.)

The trial, however, did not occur as scheduled. This is because neither the Rasmussens nor their counsel participated in drafting the joint pretrial statement or attended the pretrial conference.

The Case Management and Scheduling Order ("CMSO") set February 16, 2009 as the date on which the joint pretrial statement was due. (Doc. No. 79 at 1, filed Mar. 19, 2008.) By separate notice, Magistrate Judge Kelly set the pretrial conference for March 4, 2009. (Doc. No. 80, filed Mar. 19, 2008.) In addition, the CMSO set forth three pages of instruction regarding the expected contents of the joint pretrial statement and warned that "[s]anctions may be imposed for failure to comply, including the striking of pleadings."[2] (Doc. No. 79 at 7-9.) Regarding both the pretrial conference and statement, the CMSO stated:

> The Court will impose sanctions on any party or attorney: 1) who fails to attend and to participate actively in the meeting to prepare the Joint Pretrial Statement, or who refuses to sign and file the agreed document; 2) who fails to attend the Final Pretrial Conference, or who is substantially unprepared to participate; 3) who fails to attend the mediation and actively participate in good faith, or who attends the mediation without full authority to negotiate a settlement, or who is substantially unprepared to participate in the mediation; or 4) who otherwise fails to comply with this order. Sanctions may include but are not limited to an award of reasonable attorneys fees and costs, the striking of pleadings, the entry of default, the dismissal of the case, and a finding of contempt of court. *See* Fed. R. Civ. P. 16(f) and 37; Local Rules 9.05(c), (e); 28 U.S.C. § 1927.

(*Id.* at 12.)

The Council filed a Motion for sanctions after Mr. Cannon failed to participate in drafting the pretrial statement. (Doc. No. 176 at 3-4.) The Motion and attached declarations aver that the Council's attorneys left several voice mail messages and emails for Mr. Cannon. (*Id.* at 3-4; Doc. Nos. 177-79.) Mr. Cannon responded to one of these emails, indicating that he would review the pretrial statement; however, that was the last time he responded to a communication. (Doc. No. 176 at 4.) No response to the Council's Motion was filed.

---

[2] Local Rule 3.06 also explains in detail the expected contents of the pretrial statement.

Approximately a week and a half later, Magistrate Judge Kelly held the scheduled pretrial conference. (Doc. No. 180.) After the Rasmussens and Mr. Cannon failed to appear, Judge Kelly left a voice mail message for Mr. Cannon. (*Id.*) Several weeks later, Judge Kelly issued a Report and Recommendation in which he recommended that the Court grant the Council's Motion for Sanctions, strike the Rasmussens' Answers, and enter a default. (Doc. No. 182.) Judge Kelly instructed the Clerk of Court to send a copy of the Report and Recommendation via certified mail to Keith and Palma Rasmussen at their home address. (*Id.*) At this point, the case was removed from the Court's May trial calendar.

On April 28, 2009, the Rasmussens filed a Motion to substitute Attorney Anthony J. Brady, Jr. for Peter Cannon. (Doc. No. 184.) The next day, through Mr. Brady, the Rasmussens filed a "Brief in Response" to the Report and Recommendation. (Doc. No. 185.) Although the brief does not explicitly object to the Report and Recommendation, it does argue that "dismissal of the Rasmussens' answer for counsel's failure to draft a pretrial statement and appear at the pretrial conference is too drastic a sanction in that the litigants were not responsible for their attorney's unethical conduct." (*Id.* at 3.) In the brief and attached declarations, the Rasmussens contend that Mr. Cannon did not notify them of the deadline for the joint pretrial statements, the pretrial conference, or the Motion for Sanctions. (*Id.* at 2-3.) The Motion avers that Mr. Cannon "was terminated by the Rasmussens due to unethical conduct." (*Id.*) The Council filed a Memorandum in response contending that, after terminating three attorneys, the Rasmussens should be charged with some responsibility to monitor their counsel. (Doc. No. 186 at 4.)

## Standard of Review

Federal Rule of Civil Procedure 72 provides the appropriate procedure for district court review of a United States Magistrate Judge's report and recommendation. If a party wishes to challenge the report and recommendation, the party must "serve and file *specific* written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2) (emphasis added). As explained by the Eleventh Circuit Court of Appeals, the party's objections must "specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection." *Macort v. Prem, Inc.*, 208 F. App'x 781, 783 (11th Cir. 2006) (quoting *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989)). "The district judge must determine de novo any part of the magistrate judge's disposition *that has been properly objected to*." Fed. R. Civ. P. 72(b)(3) (emphasis added). "It is critical that the objection be sufficiently specific and not a general objection to the report." *Macort*, 208 F. App'x at 784 (citing *Goney v. Clark*, 749 F.2d 5, 7 (3d Cir. 1984)). Regarding the scope of review, litigants generally must present their evidence and arguments to the magistrate judge in the first instance to preserve review; however, the district court may, in its discretion, consider arguments and evidence presented for the first time in an objection to a report and recommendation. *Williams v. McNeil*, 557 F.3d 1287, 1291-92 (11th Cir. 2009). After concluding its review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *accord* Local Rule 6.02.

**Analysis**

**I. Failure to Present Arguments**

The Rasmussens did not respond to the Council's Motion for Sanctions. Thus, they presented no argument or evidence before Magistrate Judge Kelly. That being the case, Judge Kelly correctly granted the Council's Motion as unopposed. (*See* Doc. No. 79 at 5 ("Where no memorandum in opposition has been filed, the Court routinely grants the motion as unopposed.").) Normally, the Court would decline to consider arguments and evidence raised for the first time in an objection to a report and recommendation. *See Williams*, 557 F.3d at 1291-92 ("Systemic efficiencies would be frustrated and the magistrate judge's role reduced to that of a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round." (quoting *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000))). However, the Rasmussens have raised issues of attorney misconduct, and as explained below, the Eleventh Circuit requires district courts to consider such allegations in determining whether default is an appropriate sanction. Thus, the Court deems it appropriate to consider arguments and evidence not raised before the Magistrate.

**II. Sanctions**

    **A. Legal Principles Regarding Sanctions**

Federal Rules of Civil Procedure 16(f) and 37(b) provide the Court with the power to sanction an offending party and award reasonable expenses under certain circumstances. Rule 16(f) provides, in pertinent part, that:

> On motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney:
>     (A) fails to appear at a scheduling or other pretrial conference;

> (B) is substantially unprepared to participate — or does not participate in good faith — in the conference; or
> (C) fails to obey a scheduling or other pretrial order.

Rule 37(b)(2)(A) provides, in relevant part, that the Court may issue an order:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party; or
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

A trial court is justified in dismissing an action or ordering a default under Rule 16(f) as a sanction for the conduct of a party's counsel. *Royal Palace Hotel Assocs., Inc. v. Int'l Resort Classics, Inc.*, 178 F.R.D. 588, 591 (M.D. Fla. 1997) (citing *Goforth v. Owens*, 766 F.2d 1533, 1535 (11th Cir. 1985)). "The sanctions contained in Rule 16(f) are designed to punish lawyers and parties for conduct which unreasonably delays or otherwise interferes with the expeditious management of trial preparation." *Id.* (citing *Goforth*, 766 F.2d at 1535).

In addition, the district court possesses the inherent power to police its docket. *Link v. Wabash Railroad Co.*, 370 U.S. 626, 630-33 (1962); *Mingo v. Sugar Cane Growers Co-op of Fla.*, 864 F.2d 101, 102 (11th Cir. 1989). Incident to this power, the judge may impose formal sanctions upon dilatory litigants. *Mingo*, 864 F.2d at 102. The sanctions imposed can range from a simple reprimand to an order dismissing the action with or without prejudice. *See id.*

Irrespective of the source of the Court's authority, the sanctions of dismissal or default are warranted only on a clear record of delay or willful contempt. *Mingo*, 864 F.2d at 102; *Goforth*, 766 F.2d at 1535. The Court must first find that lesser sanctions will not suffice before a party can be

penalized for its attorney's misconduct. *Collins v. Lake Helen*, 249 F. App'x 116, 120-21 (11th Cir. 2007) (concluding that the trial court did not abuse its discretion in finding a pattern of contumacious behavior but failed to consider alternative sanctions before dismissing); *Cohen v. Carnival Cruise Lines, Inc.*, 782 F.2d 923, 925 (11th Cir. 1986) (trial court abused discretion by ordering dismissal without considering lesser sanctions); *Goforth*, 766 F.2d at 1535 (sanction of dismissal was appropriate because any order other than dismissal would have "greatly prejudiced" the defendants). Further, a court should be reluctant to impose the harsh sanction of dismissal with prejudice or default where the client itself is not actually culpable. *Goforth*, 766 F.2d at 1535; *Flaska v. Little River Marine Constr. Co.*, 389 F.2d 885, 889 (5th Cir. 1968) ("We are convinced that the able trial judge was more than patient under the circumstances, but we feel that he erred in imposing the drastic sanctions upon the innocent litigant resulting in termination of the litigation adversely to him.").[3] That said, where any other sanction would fail to cure the harm that the attorney's misconduct would cause to the party seeking sanctions, dismissal or default may be appropriate regardless of the clients's fault. *See Goforth*, 766 F.2d at 1535 (dismissal with prejudice was upheld where a plaintiff's counsel failed to submit a pretrial statement, attend the pretrial conference, or show up for trial; although the plaintiff was not personally at fault, the defendants suffered significant prejudice because they were doctors who had to cancel three days worth of appointments for trial); *Loos v. Club Paris*, No. 6:07-cv-1376-ORL-31GJK, 2009 WL 1458040, at *2-3 (M.D. Fla. May 26, 2009) (granting sanctions in the form of a default against a *pro se*

---

[3] The Eleventh Circuit Court of Appeals adopted as binding precedent all prior decisions of the former Fifth Circuit Court of Appeals issued prior to October 1, 1981. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

defendant who could not afford an attorney and claimed to have attempted to assist the plaintiff's counsel in preparing a joint pretrial stipulation; noting that the lack of meaningful participation by the defendant would hamstring the plaintiff in preparing for trial).

### B.     The Appropriateness of Sanctions in this Case

Applied to this case, these legal principles, in conjunction with the explicit warnings contained in the CMSO, clearly support the imposition of sanctions. The key question, however, is to what degree and against whom?

Three failures to comply with court orders illustrate a pattern of delay and contumacious behavior. First, either the Rasmussens, Mr. Agnes, or both, did not take seriously the Court's order to produce an accounting. The several hundred pages of annotated bank statements filed in the record failed to meet this Court's direction that the Rasmussens "explain in detail and with documentation how each fund was handled." (Doc. No. 86 at 5-9.) As should be evident from the Court's Order, the only reason summary judgment was not granted on the issue of liability for the entrusted funds was because the Council did not meet its burden, as the party moving for summary judgment, to demonstrate that it was entitled to judgment as a matter of law on each and every drawdown. (Doc. No. 173 at 22-23.) This is because the Council made its argument for summary judgment by choosing a sample of particularly vague annotations. The Court reasoned that the summary judgment posture required the Council to demonstrate its entitlement to every drawdown, at least a handful of drawdowns were accompanied by relatively clear explanations, and therefore an issue of fact remained regarding the Rasmussens' liability for the entire sum of drawdowns. (*Id.*)

Although this factual issue precluded a grant of summary judgment, the Council's failure to identify every ambiguous drawdown cannot be faulted as a practical matter. The point of the

accounting was to shift the burden of an accounting to the fiduciaries; the Rasmussens effectively shifted it back to back to the Council by doing such a poor job that their accounting required another accounting. Had the Rasmussens produced an acceptable accounting in first place, the issue of liability for at least some of the funds likely could have been resolved on summary judgment.

Thus, this failure to provide an adequate accounting has unnecessarily delayed the proceedings. Nevertheless, the record does not make clear who is at fault. As counsel for the Rasmussens, Mr. Agnes had a duty to advise his clients of the consequences of providing an inadequate accounting. *See* Fla. Rules of Prof'l Conduct R. 4-1.1 (2008) ("A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation."); *see also id.* § 4-1.3 to 1.4 (duties of diligence and communication with clients). He also had a duty to ensure that the accounting was compliant with the Court's order and considered responsive to the Council's interrogatories. At the same time, it is possible that Mr. Agnes discharged these duties and the Rasmussens nevertheless insisted on the final product that was provided to the Council. In light of the Eleventh Circuit's instruction that courts should assess the culpability of a client before ordering a default, *e.g.*, *Goforth*, 766 F.2d at 1535, additional evidence on this issue is required.

The failure to participate in the drafting of the pretrial stipulation and the failure to attend the pretrial conference are more obvious examples of contumacious behavior. The CMSO explains, in detail, both the importance of these pre-trial procedures and the sanctions that will accompany non-compliance. The Court's insistence that litigants comply with the CMSO is not born out of fastidiousness but rather a need to manage its busy trial docket. If a litigant fails to comply with these requirements, the resulting delay prejudices both the opposing party and other litigants who

are awaiting the Court's attention. Such delays also waste valuable judicial resources and, ultimately, federal tax dollars. Given the significant consequences, it should not be a surprise that dismissal and default are among the range of appropriate sanctions for failing to comply with these pretrial requirements.

However, several factual issues require clarification. Again, the record does not establish with clarity whether the Rasmussens share blame in the failures to participate in drafting the pretrial statement and to attend the pretrial conference. As the attorney of record, Mr. Cannon had a clear duty to be involved in these pretrial matters. But that fact alone does not necessarily relieve the Rasmussens of fault. An attorney acts as the agent of a client in court, and the client is generally bound by the attorney's shortcomings. *Link*, 370 U.S. at 634 ("There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent."); *see also Eades v. Ala. Dep't of Human Res.*, 298 F. App'x 862, 864 (11th Cir. 2008) (reconciling Eleventh Circuit precedent regarding the sanctioning of a non-culpable client with *Link*). Further, as the Council points out, Mr. Cannon was the third attorney retained by the Rasmussens, after they previously terminated at least one attorney. Having already experienced problems with an attorney's ability to meet deadlines, a reasonable client in the Rasmussens' position would have realized the need to actively monitor his or her new attorney.

Contending that Mr. Cannon has ceased communication with them in early February and did not keep them aware of their pretrial responsibilities, the Rasmussens seek to shift the entire blame on Cannon. However, the Court is not ready to accept this proposed allocation of fault without

additional evidence. First, the Rasmussens and all three of their previous attorneys need to clarify whether the Rasmussens were, at any point, provided with a copy of the CMSO or otherwise made aware of pretrial deadlines. Secondly, the Court will not impose sanctions on Mr. Cannon without providing him an opportunity to defend himself.

In addition, the Eleventh Circuit's opinion in *Goforth* suggests that the sanctions of dismissal or default may be imposed regardless of client fault if the contumacious behavior has caused sufficient prejudice to the opposing side. *Goforth*, 766 F.2d at 1535. The Council appears to have suffered prejudice through the expenditure of unnecessary attorneys' fees and the inconvenience of a canceled trial. (*See* Doc. No. 186 at 4-5.) The Council also contends that it has been prevented from recovering the object of its conversion counterclaim: the property allegedly under the Rasmussens' control. (*Id.* at 8.) Because the Rasmussens and their former counsel will be given a chance to present evidence as to their culpability for the conduct in this case, the Council will be given an opportunity to expand the record regarding the degree of prejudice it has suffered.

### C. Evidentiary Hearing

An evidentiary hearing is necessary in light of the factual issues described above. First, the Court will take evidence on the proper allocation of fault between the Rasmussens and their respective former counsel. *E.g.*, *Goforth*, 766 F.2d at 1535 ("A court should be reluctant to impose the harsh sanction of dismissal with prejudice where the plaintiff is not actually culpable."). To this end, the following non-parties, prior counsel of Plaintiffs, are **ORDERED** to appear at this hearing for purposes of providing testimony and evidence on the issues discussed above:

1. Attorney Edward R. Gay

2. Attorney Phillip M. Agnes

3. Attorney Peter J. Cannon

Second, the Court will take evidence on the amount of prejudice suffered by the Council. *E.g.*, *Goforth*, 766 F.2d at 1535 ("[W]here any other sanction would fail to cure the harm that the attorney's misconduct would cause to the defendant, dismissal can be appropriate."). The Council will be entitled to present testimony and argument regarding the prejudice suffered as a result of the Rasmussens' accounting and their failure to comply with pretrial procedures.[4]

The Rasmussens are cautioned that, in addition to sanctions, they may be held liable for the expenses of Mr. Gay, Mr. Agnes, and/or Mr. Cannon in attending and testifying at this hearing, if the Court finds that one or more of these attorneys is not responsible for the delays and the contumacious conduct that occurred in this case as Plaintiffs contend and that Plaintiffs in fact are at fault.

**Conclusion**

The Court **DEFERS RULING** on the Motion for Sanctions by Central Florida Council Boy Scouts of America, Inc. (Doc. No. 176, filed Feb. 23, 2009); the Report and Recommendation of Magistrate Judge Gregory J. Kelly (Doc. No. 182, filed Apr. 15, 2009); and the Motion by Palma and Keith Rasmussen to Substitute Attorney Anthony J. Brady, Jr. for Peter J. Cannon (Doc. No. 184, filed Apr. 28, 2009). The Court will hold an evidentiary hearing on Monday, August 24, 2:30 pm at which the parties should be prepared to present evidence material to the factual issues described above and argument regarding the proper sanctions. The hearing will occur at the United

---

[4] The Council additionally argues that the Rasmussens have made a number of factual misrepresentations in the various memoranda they filed during this case. (Doc. No. 186 at 4-5.) To the extent any of these alleged misrepresentations has caused prejudice to the Council, testimony to this effect may be presented at the hearing. However, both parties are cautioned that this hearing will not be used to explore the merits of the Council's counterclaims.

States Courthouse, 401 W. Central Blvd., Orlando, Florida 32801-0120 in Courtroom 3B. The failure of the Rasmussens to attend this hearing or otherwise comply with the instructions in this Order will result in the striking of their Answers, (Doc. Nos. 23, 24, filed Dec. 5, 2007), and the entry of default.

**THE UNITED STATES MARSHAL IS DIRECTED TO SERVE** a copy of this Order to the following persons and file a return of service in the docket:

Edward R. Gay
1516 E Concord St
Orlando, FL 32803

Peter J. Cannon
Irvin Law Firm, LLC
Suite 4
1207 N Himes Ave
Tampa, FL 33607

Philip Mathew Agnes
Agnes Barak & Zitani, LLP
3336 Higel Ave
Sarasota, FL 34242

**DONE** and **ORDERED** in Chambers in Orlando, Florida on June 12, 2009.

*[Signature]*

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Palma and Keith Rasmussen via certified mail

Counsel of Record