CENTRAL FLORIDA COUNCIL
BOY SCOUTS OF AMERICA, INC.,

                        **Counterclaim Plaintiff,**

-vs-                                            **Case No.  6:07-cv-1091-Orl-19GJK**

PALMA RASMUSSEN,
KEITH RASMUSSEN,

                        **Counterclaim Defendants.**
_____

# ORDER

This case comes before the Court on the following:

1.  Motion for Sanctions by Central Florida Council Boy Scouts of America, Inc. (Doc. No. 176, filed Feb. 23, 2009);

2.  Declarations in Support of Motion for Sanctions by Central Florida Council Boy Scouts of America, Inc. (Doc. Nos. 177-79, filed Feb. 23, 2009);

3.  Final Pretrial Conference Held Before Magistrate Judge Gregory J. Kelly (Doc. No. 180, filed Mar. 4, 2009);

4.  Report and Recommendation of Magistrate Judge Gregory J. Kelly (Doc. No. 182, filed Apr. 15, 2009);

5.  Motion by Palma and Keith Rasmussen to Substitute Attorney Anthony J. Brady, Jr. for Peter J. Cannon (Doc. No. 184, filed Apr. 28, 2009);

6.  Brief in Response to the Report and Recommendation by Palma and Keith Rasmussen (Doc. No. 185, filed Apr. 29, 2009);

7.      Memorandum of Law by Central Florida Council Boy Scouts of America, Inc. in Opposition to Counterclaim Defendants' Brief in Response to the Report and Recommendation (Doc. No. 186, filed May 13, 2009);

8.      Order Deferring Ruling on Motion for Sanctions by Central Florida Council Boy Scouts of America, Inc. (Doc. No. 187, filed June 12, 2009); and

9.      Evidentiary Hearing Held on August 24, 2008, Regarding the Motion for Sanctions by Central Florida Council Boy Scouts of America, Inc. (Doc. No. 193, filed Aug. 25, 2009).

## Background

The factual and procedural background regarding the Motions before the Court are explained in detail in this Court's previous Order. (Doc. No. 187 at 1-6.) Put briefly, Counterclaim Plaintiff, Central Florida Council, Boy Scouts of America, Inc. ("the Council"), seeks sanctions against Counterclaim Defendants Palma Rasmussen and Keith Rasmussen. The Council's Motion was prompted by the failure of the Rasmussens and their attorney of record at the time, Peter Cannon, to participate in drafting a pretrial statement and attend the pretrial conference before the Magistrate Judge. Soon after, the Magistrate Judge issued a Report and Recommendation in which he recommended that the Rasmussens' Answers be stricken and a default be entered against them. After the Report and Recommendation was sent to them via certified mail, the Rasmussens obtained new counsel, Mr. Anthony Brady, who filed an Objection to the Report and Recommendation. The Objection essentially blames Mr. Cannon for the Rasmussens' failure to comply with pretrial procedures. The Council opposed the Objection, arguing that the Rasmussens must, at some point, be held responsible for their attorneys' shortcomings.

Ruling on the Objection, the Court found that the Rasmussens had demonstrated a pattern of contumacious behavior by violating at least three Court Orders. (*Id.* at 11.) First, the Rasmussens had supplied the Council with an inadequate accounting, contrary to the Court's Order of April 11, 2008. (*Id.* at 11-12.) Second, the Rasmussens had violated the Case Management and Scheduling Order ("CMSO"), (Doc. No. 79, filed Mar. 19, 2008), by failing to participate in the drafting of a pretrial statement. (Doc. No. 187 at 12-13.) Third, the Rasmussens had violated the CMSO by failing to attend the pretrial conference. (*Id.*)

Despite the pattern of contumacious conduct, however, the Court found that the Eleventh Circuit's case law compelled the need to take additional evidence before crafting the appropriate remedy. (*Id.* at 13.) The Court's reasoning was based on two related legal principles. First, the Eleventh Circuit has held that an innocent client should not ordinarily be punished with the sanctions of dismissal with prejudice or default where the attorney, and not the client, is at fault. (*Id.* at 10 (citing *Goforth v. Owens*, 766 F.2d 1533, 1535 (11th Cir. 1985); *Flaska v. Little River Marine Constr.*, 389 F.2d 885, 889 (5th Cir. 1968)).)[1] Second, the only instance in which an innocent client should receive such drastic sanctions is where lesser sanctions would fail to cure the prejudice suffered by the opposing party. (*Id.* (citing *Goforth*, 766 F.2d at 1535).) Thus, the Court required evidence on: (1) the degree to which the Rasmussens were at fault for their attorneys' misconduct; and (2) the degree to which the Council has suffered prejudice.

At the hearing, the Court heard testimony from Palma Rasmussen, Keith Rasmussen, the Rasmussens' first attorney, Mr. Edward R. Gay, the Rasmussens' second attorney, Mr. Phillip

---

[1]     The Eleventh Circuit Court of Appeals adopted as binding precedent all prior decisions of the former Fifth Circuit Court of Appeals issued prior to October 1, 1981. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Agnes, and the Rasmussens' third attorney, Mr. Cannon.  Testimony from Samuel McCoubrey, an attorney for the Council, was also presented.  (*See* Doc. No. 193 at 1.)

Regarding the first category of contumacious behavior, the failure to provide an adequate accounting, Mrs. and Mr. Rasmussen testified that they provided the answers to the Council's interrogatories based on the advice of their attorney at the time, Mr. Agnes.  As explained in this Court's previous Orders, the accounting provided by the Rasmussens consisted entirely of annotated bank statements and canceled checks, supported mostly with cryptic explanations for expenditures. (Doc. No. 173 at 20-23; Doc. No. 187 at 11-12.)  Mrs. Rasmussen admitted that she did not keep any receipts for the purchases and expenditures from the Council's funds, and she also admitted to initialing a ledger of the Council accounts turned over to her by the parent previously in charge of them.  However, despite receiving and initialing the ledger, she believed that she was not required to keep such detailed records.

Mr. Agnes confirmed that he told the Rasmussens that they could satisfy the Court's Order directing an accounting by simply turning over annotated bank statements.  He also reviewed the documents before he turned them over to the Council.  In his judgment, he testified, the accounting complied with the Court's directions.

On the issue of failing to attend the pretrial conference, Mrs. Rasmussen testified that none of her attorneys provided her with the date of the pretrial conference or even made her aware that one would be held.  Mr. Rasmussen testified to the same effect.  The Rasmussens also testified that they had no legal training; however, on cross examination, Mrs. Rasmussen admitted that she and Mr. Rasmussen have been involved in at least seven court cases, several of which they prosecuted or defended *pro se*.  The Rasmussens testified that they were not aware that they could check the

Court's docket on PACER until they spoke with Mr. Brady before the hearing, but they did know that the Court had denied the Council's summary judgment motion, and they knew that this case would go to trial at some point in the future.

Mr. Gay, Mr. Agnes, and Mr. Cannon all testified that they did not inform the Rasmussens of the pretrial conference date. Mr. Gay remembered telling the Rasmussens about the trial date, but his representation was terminated nearly a year before trial, so he did not discuss pretrial procedures with his clients. When asked why he was terminated, Mr. Gay responded that he was brought onboard to litigate only one count of the Complaint, and that Count was resolved by the Court in the first summary judgment Order. Mr. Gay's Motion to Withdraw, however, stated that he wished to withdraw due to his clients' dissatisfaction with his services, which was evidenced by a *pro se* filing asking for reconsideration of the Court's first summary judgment Order. (Doc. No. 91, filed May, 9, 2008.) The Rasmussens' request was prompted in large part by Mr. Gay's failure to timely submit the Rasmussens' response and evidence in opposition to the Council's first motion for summary judgment. (*See* Doc. No. 89.) In addition, Mr. Agnes stated that he never discussed pretrial responsibilities with the Rasmussens. Mr. Agnes testified that he withdrew from the case for ethical reasons, specifically that he was not competent to represent the Rasmussens in the matters still pending before the Court.

Mr. Cannon testified that he not only failed to discuss pretrial matters with the Rasmussens, but he also was unaware of his own responsibility to attend the pretrial conference. Mr. Cannon stated that he agreed to represent the Rasmussens after he spoke to Mr. Agnes, who wished to withdraw from the case, and to the Rasmussens. According to Cannon, the Rasmussens and Agnes "sold" him on a different case than he actually inherited. Supposedly, the case was trial ready and

featured a strong Americans with Disabilities Act ("ADA") claim, but in reality the ADA claim was somewhat weak, and the Council's counterclaims were prominent. At some point, Mr. Cannon told the Rasmussens that the case was not ready for trial and he felt that it had been misrepresented to him. Mr. Cannon did not research the case on PACER before agreeing to represent the Rasmussens, nor did he log in to CM/ECF to check on the case's status after making an appearance on behalf of the Rasmussens.[2]

Mr. Cannon testified that he missed the pretrial conference before the Court because he failed to calender it, even though the Council's attorneys had contacted him about it and other pretrial matters prior to the date of the hearing. He also failed to participate in drafting the joint final pretrial statement as directed in the CMSO, (Doc. No. 79 at 1-2), despite being contacted by the Council's attorneys on this matter. He testified that he was not sure when he learned about the missed conference, but it might have been when he received the Magistrate Judge's Report and Recommendation. He admitted that he never told his clients about the missed conference or filed anything on their behalf to preserve their rights.

Regarding the prejudice to the Council, Mr. McCoubrey testified that the Council's law firm, Hughes, Hubbard, and Reed, expended about fifty associate hours reviewing the Rasmussens' accounting response and drafting a second set of interrogatories to address deficiencies in it. In addition, the firm spent about twenty-five hours of associate time preparing for the pretrial conference, twenty-five hours of associate time on the request for sanctions, and about 125 hours of paralegal time on the combination of the accounting deficiencies, preparing for the pretrial

---

[2]     Mr. Cannon admitted that he knew what CM/ECF was. He also testified that he was a member of the Bar of this Court, the Bar of the Eleventh Circuit, and the Bar of the United States Supreme Court.

conference, and on the request for sanctions.  The billing rate for associate time was about $360 to $440 per hour, and the rate for paralegal services was about $220 per hour.

## Analysis

Several sources of authority permit the Court to craft sanctions to punish contumacious conduct.  Regarding the pretrial conference and statement, the CMSO states:

> The Court will impose sanctions on any party or attorney: 1) who fails to attend and to participate actively in the meeting to prepare the Joint Pretrial Statement, or who refuses to sign and file the agreed document; 2) who fails to attend the Final Pretrial Conference, or who is substantially unprepared to participate; 3) who fails to attend the mediation and actively participate in good faith, or who attends the mediation without full authority to negotiate a settlement, or who is substantially unprepared to participate in the mediation; or 4) who otherwise fails to comply with this order. Sanctions may include but are not limited to an award of reasonable attorneys fees and costs, the striking of pleadings, the entry of default, the dismissal of the case, and a finding of contempt of court. *See* Fed. R. Civ. P. 16(f) and 37; Local Rules 9.05(c), (e); 28 U.S.C. § 1927.

(Doc. No. 79 at 12.)

In addition, Federal Rules of Civil Procedure 16(f) and 37(b) provide the Court with the power to sanction an offending party and award reasonable expenses under certain circumstances. Rule 16(f) provides, in pertinent part, that:

> On motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney:
> (A) fails to appear at a scheduling or other pretrial conference;
> (B) is substantially unprepared to participate — or does not participate in good faith — in the conference; or
> (C) fails to obey a scheduling or other pretrial order.

Rule 37(b)(2)(A) provides, in relevant part, that the Court may issue an order:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;
(v) dismissing the action or proceeding in whole or in part;
(vi) rendering a default judgment against the disobedient party; or
(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

A trial court is justified in dismissing an action or ordering a default under Rule 16(f) as a sanction for the conduct of a party's counsel. *Royal Palace Hotel Assocs., Inc. v. Int'l Resort Classics, Inc.*, 178 F.R.D. 588, 591 (M.D. Fla. 1997) (citing *Goforth v. Owens*, 766 F.2d 1533, 1535 (11th Cir. 1985)). "The sanctions contained in Rule 16(f) are designed to punish lawyers and parties for conduct which unreasonably delays or otherwise interferes with the expeditious management of trial preparation." *Id.* (citing *Goforth*, 766 F.2d at 1535).

Beyond these Rules and the specific provisions of the CMSO, the District Court possesses the inherent power to police its docket. *Link v. Wabash Railroad Co.*, 370 U.S. 626, 630-33 (1962); *Mingo v. Sugar Cane Growers Co-op of Fla.*, 864 F.2d 101, 102 (11th Cir. 1989). Incident to this power, the judge may impose formal sanctions upon dilatory litigants. *Mingo*, 864 F.2d at 102. The sanctions imposed can range from a simple reprimand to an order dismissing the action with or without prejudice. *See id.*

Irrespective of the source of the Court's authority, however, the drastic sanctions of dismissal or default are warranted only on a clear record of delay or willful contempt. *Mingo*, 864 F.2d at 102; *Goforth*, 766 F.2d at 1535. The Court must first find that lesser sanctions will not suffice before a party can be penalized for its attorney's misconduct. *Collins v. Lake Helen*, 249 F. App'x 116, 120-21 (11th Cir. 2007) (concluding that the trial court did not abuse its discretion in finding a pattern of contumacious behavior but failed to consider alternative sanctions before dismissing); *Cohen v. Carnival Cruise Lines, Inc.*, 782 F.2d 923, 925 (11th Cir. 1986) (trial court abused discretion by

ordering dismissal without considering lesser sanctions); *Goforth*, 766 F.2d at 1535 (sanction of dismissal was appropriate because any order other than dismissal would have "greatly prejudiced" the defendants). Further, a court should be reluctant to impose the harsh sanction of dismissal with prejudice or default where the client itself is not actually culpable. *Goforth*, 766 F.2d at 1535; *Flaska v. Little River Marine Constr. Co.*, 389 F.2d 885, 889 (5th Cir. 1968) ("We are convinced that the able trial judge was more than patient under the circumstances, but we feel that he erred in imposing the drastic sanctions upon the innocent litigant resulting in termination of the litigation adversely to him."). *But see Link*, 370 U.S. at 634 ("There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent.") That said, where any other sanction would fail to cure the harm that the attorney's misconduct would cause to the party seeking sanctions, dismissal or default may be appropriate regardless of the clients's fault. *See Goforth*, 766 F.2d at 1535 (dismissal with prejudice was upheld where a plaintiff's counsel failed to submit a pretrial statement, attend the pretrial conference, or show up for trial; although the plaintiff was not personally at fault, the defendants suffered significant prejudice because they were doctors who had to cancel three days worth of appointments for trial); *Loos v. Club Paris*, No. 6:07-cv-1376-ORL-31GJK, 2009 WL 1458040, at *2-3 (M.D. Fla. May 26, 2009) (granting sanctions in the form of a default against a *pro se* defendant who could not afford an attorney and claimed to have attempted to assist the plaintiff's counsel in preparing a joint pretrial stipulation; noting that the lack of meaningful participation by the defendant would hamstring the plaintiff in preparing for trial).

The Court's previous Order observed that "these legal principles, in conjunction with the explicit warnings contained in the CMSO, clearly support the imposition of sanctions." (Doc. No. 187 at 11.) However, a key question remained: "to what degree and against whom?" (*Id.*) The hearing has provided the information necessary to answer that question.

## I.     Sanctions Against the Rasmussens

As stated in the Court's previous Order, a pattern of contumacious conduct has been established through three violations of Court Orders: the provision of an inadequate accounting, the failure to participate in the drafting of the joint final pretrial statement, and the failure to attend the final pretrial conference. For the reasons stated below, and after considering the full spectrum of potential sanctions, the Court finds that the striking of the Rasmussens' Answers and the entry of default is the appropriate sanction and, further, that lesser sanctions will not suffice.

### A.     Culpability of the Rasmussens

Although the Supreme Court has commented that a client cannot "avoid the consequences of the acts or omissions of [a] freely selected agent," *Link*, 370 U.S. at 633-34, the Eleventh Circuit has expressed concern at the prospect of punishing a client for his or her attorney's mistakes.[3] *See Collins*, 249 F. App'x at 120-21; *Cohen*, 782 F.2d at 925; *Goforth*, 766 F.2d at 1535. In this case, however, the Rasmussens do not squarely fit the mold of the innocent client.

First, past events in this case suggest that the Rasmussens should have demonstrated greater vigilance in policing their second and third attorneys. Mr. Gay filed all of the Rasmussen's

---

[3]     In *Link*, the Court also observed, "Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney." *Link*, 370 U.S. at 634.

summary judgment materials late, causing the Court to exclude portions of their evidence during its analysis. (Doc. No. 76 at 2 n.1; Doc. No. 86 at 2-5; Doc. No. 89 at 2.) The Rasmussens filed a *pro se* Motion for Reconsideration on May 6, 2008, complaining of Mr. Gay's poor performance, particularly his late submission of the summary judgment materials and his failure to communicate. (Doc. No. 89.) Mr. Gay then withdrew due to the Rasmussens' dissatisfaction. (Doc. Nos. 91, 94.) Mr. Agnes later withdrew because he felt that he could not competently handle the matters presented by the case.

Thus, Mr. Cannon was the third attorney the Rasmussens retained in this case. By this point, and especially in light of the problems concerning Mr. Gay's representation of them, the then status of the case, and the length of time it had been pending, the Rasmussens should have realized a need to monitor their counsel's compliance with deadlines. This duty would have involved, at a minimum, inquiring and conferring with counsel about whether any important deadlines were approaching. To the extent Mr. Cannon would have been unresponsive to such inquiries, the Rasmussens would have known to immediately obtain new counsel or to make further inquiry.[4]

Further, although the Rasmussens do not have legal training, it is difficult to believe their contention that they were wholly unaware that the preparation of this case for trial would require some sort of pretrial interaction with the Court and opposing counsel. The Rasmussens have been involved in seven legal proceedings, including two in which at least one of them proceeded *pro se*. Their *pro se* submissions to this Court, albeit procedurally improper, were articulate and demonstrated that the Rasmussens had read and understood the Court's first summary judgment Order and the first Order denying reconsideration. (*See* Doc. No. 89 at 2-6.) The Rasmussens knew

---

[4]        The need to monitor counsel in no way excuses Mr. Cannon for his behavior.

that the Council's request for summary judgment was denied and that trial would occur in the future. They may not have known the details of their pretrial obligations, but they had reason to believe that there would be at least some sort of pretrial responsibility. In light of their past problems with Mr. Gay, they should have found out what those obligations would be.

More significantly, the Rasmussens were directly involved in producing the accounting that was turned over to the Council. Granted, the Rasmussens acted with the blessing of Mr. Agnes in devising an inadequate method of response to the Council's demand and the Court's Order for an accounting. Nevertheless, they appear sophisticated enough to understand just how inadequate their response was. And, significantly, this inadequacy was caused in large part by their failure to keep a ledger, or to keep receipts of purchases and expenditures, or to otherwise document in a verifiable manner their handling of the Council's funds. Thus, the Rasmussens were also culpable for the accounting provided to the Council.

In sum, attorney malfeasance played the prominent role in the contumacious conduct that occurred in this case. However, the Rasmussens, as experienced and relatively sophisticated clients, should have more closely monitored their counsel, especially in light of their past problems. In other words, their vigilance could have prevented at least some of the contumacious conduct that occurred, and it would have certainly mitigated the prejudicial effects on the Council. Thus, the Court finds that the Rasmussens are at least partially responsible for violating the Order directing a detailed accounting, the Order directing the production of a joint final pretrial statement, and the Order directing attendance at the final pretrial conference before the Magistrate Judge.

**B. Prejudice to the Council**

An additional consideration in crafting appropriate sanctions is to determine the prejudice suffered by the opposing party. *Goforth*, 766 F.2d at 1535. Particularly when imposing the drastic sanctions of dismissal with prejudice or default, the Court must determine whether lesser sanctions would suffice. *Id.* In *Goforth,* the Eleventh Circuit found that the sanction of dismissal with prejudice was appropriate where the plaintiff and his counsel failed to prepare a pretrial statement, attend the pretrial conference, and attend the trial. The Court determined that lesser sanctions would not suffice because the defendants in the case were three doctors who canceled several days worth of appointments to attend the trial; permitting a second trial to occur would punish them by requiring them to miss even more appointments. *Id.* Thus, the prejudice to the defendants warranted dismissal, despite the apparent lack of fault on the plaintiff's part. *Id.*

In this case, default on both the accounting and conversion claims is the only sanction reasonably capable of curing the prejudice to the Council under the facts of this case. As explained in two of the Court's previous Orders, the accounting provided by the Rasmussens was egregiously deficient. (Doc. No. 173 at 22-23; Doc. No. 187 at 11-12.) Rather than providing the Council with a coherent explanation of how the Rasmussens handled the Council's funds, the accounting forced the Council to expend a substantial sum of attorneys' fees in an attempt to decipher the documents and responses that the Rasmussens provided. Forcing the Council to further litigate the meaning of responses like "eggrolls for picky eaters," (Doc. No. 150-6 at 35), is simply unfair. Moreover, the fees that will be accrued by forcing the Council to further litigate this matter threaten to dwarf the potential recovery. At this point, the only remedy capable of curing the prejudice on the claim for

an accounting is to default the Rasmussens on the issue of liability for the Council's funds they handled and for the Council property they failed to return.

The sanction of default on both claims is necessary to cure the prejudice to the Council caused by the Rasmussens' failure to participate in drafting a pretrial statement and their failure to attend the pretrial conference. Both instances of contumacious conduct forced the Council to expend unnecessary resources. The Court could permit the Council to proceed to trial on a unilateral pretrial statement, essentially prohibiting the Rasmussens from introducing evidence, or prohibit the Rasmussens from raising any defenses to the Council's claims. But in the context of a bench trial where the Rasmussens bear the burden to justify their own expenditures, (*see* Doc. No. 173 at 23), and in light of the evidence provided at the summary judgment stage, there would be no discernable difference between those two sanctions and simply ordering a default. In both instances, the Rasmussens will be able to contest the amount of damages. A default, however, would permit the Council to save the attorneys' fees associated with preparing for and litigating their case for liability.

The third and final reason making a default the appropriate sanction is related to timing. The Council avers that the property which is the subject of its conversion claim has been held by the Rasmussens for several years. Had the trial occurred in April, as planned, this matter would be resolved by now. Forcing the Council to try this issue many months later imposes further delay on the Council, the party which has complied with its pretrial obligations, and prejudices the Council's ability to achieve a meaningful recovery.

Accordingly, the prejudice suffered by the Council, combined with the partial culpability of the Rasmussens, supports the imposition of the sanction of default. The Court will order the

Rasmussens' Answers stricken and will instruct the clerk to enter a default on both of the Council's counterclaims against the Rasmussens.

## II.        Sanctions Against Attorney Peter Cannon

For the reasons stated above, the sanction of default remedies much of the prejudice that the Council has suffered.  Nevertheless, the conduct of Mr. Cannon is sufficiently reprehensible to warrant the imposition of sanctions against him personally.  Further, the Court deems it just to require Mr. Cannon to directly reimburse the Council for the costs and fees expended in prosecuting its request for sanctions.

Put simply, Mr. Cannon is guilty of gross negligence and incompetence.  To begin, despite being a member of this Court's bar with access to CM/ECF, Mr. Cannon, by his own testimony, entered an appearance and became counsel of record in the case for the Rasmussens having done no research into the nature of the pending claims or the status of the litigation.  An attorney's basic duty of competent representation requires an understanding of the case which he has agreed to assume.  Having the status of a case "misrepresented" by a client or another attorney is simply no excuse for dereliction of duty when the docket itself contained ample information to inform and resolve any questions Mr. Cannon may have had.

To make matters worse, Mr. Cannon did not bother to check the docket after making an appearance; thus, he never calendared the approaching final pretrial deadlines.  Even after being notified by the Council's attorneys of the impending final pretrial responsibilities, Cannon neither participated in drafting the joint final pretrial statement nor attended the final pretrial conference. And after being notified of the missed deadlines through the Report and Recommendation of the Magistrate Judge, Mr. Cannon did nothing to preserve his clients' rights.

Mr. Cannon's derelictions not only prejudiced his own clients, but they also caused the Council to expend unnecessary costs, travel expenses, and attorneys' fees. In the interests of deterrence and compensation, the Court will order Mr. Cannon to reimburse the Council for the attorneys' fees and costs associated with the Council's request for sanctions. The Council may apply for these fees and costs by separate motion.

## Conclusion

Based on the foregoing:

1. The Motion for Sanctions by Central Florida Council Boy Scouts of America, Inc. (Doc. No. 176, filed Feb. 23, 2009) is **GRANTED**, and the Report and Recommendation of Magistrate Judge Gregory J. Kelly (Doc. No. 182, filed Apr. 15, 2009) is **ADOPTED**.

1. The Answer of Plaintiff/Counterclaim Defendant, Palma Rasmussen (Doc. No. 23, filed Dec. 5, 2007), is **STRICKEN**.

2. The Answer of Counterclaim Defendant, Keith Rasmussen (Doc. No. 24, filed Dec. 5, 2007), is **STRICKEN**.

3. The Clerk shall enter a default against Counterclaim Defendant Palma Rasmussen and Counterclaim Defendant Keith Rasmussen on both of the Council's counterclaims against the Rasmussens.

4. If a default judgment is desired, the Council shall submit a motion for a default judgment within thirty (30) days from the date of this Order. Upon the filing of such motion, the Court will schedule an evidentiary hearing by separate notice.

5. Attorney Peter Cannon shall reimburse the Council for the attorneys' fees associated with the prosecution of the Council's request for sanctions. The Council may apply for these fees

by separate motion within ten (10) days from the date of this Order. A copy of such application shall be served on Mr. Cannon.

6. The Motion by Palma and Keith Rasmussen to Substitute Attorney Anthony J. Brady, Jr. for Peter J. Cannon (Doc. No. 184, filed Apr. 28, 2009) is **GRANTED**. Attorney Cannon's withdrawal as an attorney of record in this case and from representation of the Rasmussens does not relieve him of his responsibility to comply with this Order.

7. A copy of this Order shall be forwarded by the Clerk to The Florida Bar for consideration whether the behavior of Mr. Cannon should be the subject of a grievance proceeding.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on August 28, 2009.

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record
Attorney Edward R. Gay
Attorney Philip Mathew Agnes
Attorney Peter J. Cannon
Grievance Committee of the Bar of the Middle District of Florida
Florida Bar

-17-